(Hamilton County Court of Common Pleas.)

OLIVE ROBINSON v. L. VON DOLCKE ET AL.

A transfer of property without consideration will not be set aside at the suit of a subsequent creditor, as in fraud of creditors, on suspicious circumstances only. The burden is on such creditor to show that the transfer was made with intent, on the part of the grantor, thereby, to defraud subsequent creditors.

(Decided June, 1895.)

SAYLER, J.

I held on the trial of the case that the evidence showed that Miss Robinson had paid her money to L. Von Dolcke on representations made by L. Von Dolcke and H. G. Rich which were not true; that L. Von Dolcke and H. G. Rich had conspired to make such statements for the purpose of inducing her to part with her money, and did thereby induce her to part with it, and that she was therefore entitled to a judgment against L. Von Dolcke and H. G. Rich for the amount of $650, with interest.

It is claimed on the part of the plaintiff that certain property purchased in the name of Rose Von Dolcke, at about the time of the transactions between Miss Robinson, Von Dolcke and Rich, should be subjected to the payment of the judgment of plaintiff against L. Von Dolcke and H. G. Rich, on the ground that the purchase price of such property was paid with the money of L. Von Dolcke, and that the evidence shows that the property was put in her name to defraud his creditors, and this part of the case was held for consideration.

The property was offered for sale at administrator's sale, on April 19, 1894, and L. Von Dolcke attended the sale, and bought the property in the name of Rose Von Dolcke, his wife, for $7,666.68, one-third to be paid cash and balance in one and two years.

On April 27, 1894, two checks for a total sum of $2,555.56, drawn by Rose Von Dolcke on her own bank account, were given to the administrator in payment of the first instalment of the purchase price; a deed was executed to her on May 3, 1894.

Miss Robinson first saw Von Dolcke and Rich on April 17 or 18, 1894, and concluded to take instructions from Von Dolcke to an amount of $100, and buy an apparatus of the value of $125. She then returned home, and came back to Cincinnati on April the 26th or 27th (I think on the 26th), and paid $125 to Von Dolcke on account of such instruction and cost of apparatus, and on the same or the next day the agreement was made between Von Dolcke, Rich and her by which she and Rich were to pay $1,950 to Von Dolcke for a patented apparatus, and the right to use it in certain territory—$500 cash, and the balance on May 15; she to pay $650 and Rich to pay $1,300; and she thereupon paid to Von Dolcke $41, making, with the prior sum of $125, the sum of $166, being her one-third of the first payment.

She paid $483, being her one-third of the deferred payment, to Rich some days after May 17, 1894. This money paid to Rich was at once paid over to Von Dolcke, and was in fact a payment to Von Dolcke.

I am cited to the following cases as establishing the right of a subsequent creditor to contest a gift on the ground of fraud.

In Bank of U. S. v. Ennis et al., Wright's Rep., 605, Ennis conveyed the property in trust for his wife when he was in sinking circumstances; yet the court held the trust valid as against a subsequent creditor, because, as I take it, there was a failure on the part of the plaintiff to show a fraudulent design.

In Creed v. Lancaster Bank, 1 Ohio St., 1, John Creed purchased certain stocks, and gave them to his children and others, at a time when he was solvent and able to make such gifts. The court holds on page 9 that "there is no more objection against a man, if he be able to do it, giving away his property, than there is to his selling it. It is only when existing creditors are injured by it, or when there is a fraudulent intent as to subsequent creditors, that a gift of property can be objected to. There is nothing of that kind in this case."

In Crumbaugh v. Kugler, 2 Ohio St., 374, Kugler, being largely in debt, gave away to his children large parts of his property, not retaining sufficient to pay his existing debts; and the court holds such gifts void as against existing creditors; but as the gifts were made without intentional fraud, they were held good as to subsequent creditors. The court say, Ib., 379: "It is only because that being in debt, he is bound in good faith to have a regard, in the disposition of his property, to the just claims of his creditors, to regard the obligation which he has incurred to them, that any objection can be made to the transaction. This principle does not apply at all to the subsequent creditors; they give credit to their debtor as he is, for what he has, not for what he once had.''

In Webb's Adm'r v. Roff, 9 Ohio St., 430, Webb, being in somewhat embarrassed circumstances, executed a mortgage to his mother to secure a past indebtedness, which mortgage the mother transferred to his children for love and affection. It appeared that all debts existing at the time of the execution of the mortgage had been paid, and it was sought to subject the property to the payment of subsequent debts on the ground that the mortgage was given to cover up and protect the property from creditors.

The court followed Crumbaugh v. Kugler and held the mortgage conveyance good as against subsequent creditors. In discussing the question of the rights of subsequent creditors the court say, Ib., p. 434: "It is possible that the authorities may be satisfactorily reconciled by observing a distinction between that class of cases where the debtor has made an absolute conveyance by sale or gift to defraud existing creditors, without reserving to himself any trust, and that class of cases in which the fraud would seem to be directed as well against future as existing creditors. Thus, if one possessed of property and of good credit should make a voluntary conveyance of his property with a view to becoming subsequently indebted, and should by means of his former reputation contract debts shortly after the conveyance of his property, the creditors being ignorant of the fact, the fraud might well be regarded as directed specifically against such subsequent creditors. To the last mentioned class of cases, as including subsequent creditors, should doubtless be added those voluntary and colorable conveyances made and held under such circumstances as are attended, in law, by the presumption of a secret trust for the grantor, and constituting a continuing fraud."

In Oliver v. Moore et al, 23 Ohio St., 473, the court found that the plaintiff was a creditor at the time the gift was made, and the defendant was insolvent at the time of the gift. The court held that the gift was void as against existing creditors; and the court further held that in such

case the burden is on the defendant to show solvency at the time of the gift.

In Evans et al. v. Lewis, 30 Ohio St., 11, the action was prosecuted by Lewis, a subsequent creditor, to set aside a deed made by Evans to his wife, and the court held that such conveyance would be set aside only on proof that it was made with intent on the part of the grantor thereby to defraud such subsequent creditor or creditors, and the court say, Ib., p. 15: "The right of Mrs. Lewis, as a subsequent creditor, to have the conveyances set aside, depends on the question, whether or not they were made by Thomas Evans, with the intent at the time thereby to defraud her as such future and prospective creditor."

The rights of existing creditors and of subsequent creditors are well distinguished in these two last cases, 23 Ohio St., 473, and 30 Ohio St., 11. As to existing creditors, the gift is void if the donor is insolvent, and the burden is on the donor to show solvency. As to subsequent creditors, the gift is void only when it is made to appear that it was made with intent at the time to defraud such person as a future and prospective creditor.

This same distinction is laid down in Story's Eq., Juris., Sec. 361, where, quoting from Chancellor Kent, the author says: "And he finally arrived at the conclusion that 'fraud in a voluntary settlement was an inference of law, and ought to be so far as it concerned existing debts; but that as to subsequent debts, there is no such necessary legal presumption, and there must be proof of fraud, in fact; and the indebtedness at the time, though not amounting to insolvency, must be such as to warrant that conclusion.' "

In Reade v. Livingston, 3 Johns, Ch.; 481, the court holds that a subsequent creditor may impeach a gift by showing antecedent debts, and, on page 501, lays down the same doctrine quoted from Story, supra. And it seems to me the court, in Sexton v. Wheaton, 8 Wheaton R., 229, lays down the doctrine stated in Story. The court say that circumstances shall be considered in determining whether the fraudulent intent existed, and in that case found that it did not exist. The court, on page 251, in distinguishing the English and American cases, especially note that all titles to land are placed upon record in this country. "The person who trusts another on the faith of his real property knows where he may apply to ascertain the nature of the title held by the person to whom he is about to give credit. In this case the title never was in Joseph Wheaton. His creditors, therefore, never had a right to trust him on the faith of this house and lot."

Now it will be noticed that in all the Ohio cases cited, except 30 Ohio St., 11, the gifts were held valid as to subsequent creditors, and in 30 Ohio St., the judgment of the court below holding the gift void was reversed.

In the case at bar there is no evidence on the part of the plaintiff that the property was purchased by L. Von Dolcke and given to his wife with intent to defraud the plaintiff, as a future and prospective creditor.

The sale of the property was on April 19, 1894. At that time Von Dolcke bid in the property in the name of his wife, Rose Von Dolcke. Under the authorities I think that the intent existing at this time should control.

Miss Robinson first saw Von Dolcke on April 17 or 18, and then agreed to take lessons and buy an apparatus at an expense of $225. It would hardly be reasonable to suppose that Von Dolcke was putting the property in his wife's name to avoid any liability growing out of this agreement.

Vol. 1—41*

On April 26, Miss Robinson paid $166 and entered into the agreement to make a total payment of $650, and, on that day, two checks amounting to $2,555.56, drawn by Mrs. Von Dolcke, were given in payment of the first installment of the purchase price of the house, and a deed was executed to her on May 3.

Miss Robinson made no further payment till after May 17.

These facts alone certainly raise no inference of intent to defraud her as a future creditor by placing the title of the property in the name of Rose Von Dolcke.

There is no evidence of debts of Von Dolcke at the time of the purchase, except a debt which Von Dolcke claimed he owed to Mr. Rich; claimed by Von Dolcke to have grown out of prior patent transactions, but even if such debt existed, it was to be repaid by giving Rich interests in territory for sale of the patented machines. Von Dolcke asserts that such claims existed against him in favor of Rich, but the testimony of Rich does not indicate that he thought Von Dolcke was indebted to him, and I do not think any such debt did exist.

It can hardly be claimed that the circumstances attending the purchase of the property on April 19 are such as would raise a presumption of a secret trust in favor of Von Dolcke, unless such presumption would be based on the presumption from the circumstance that the money paid for the consideration belonged to Von Dolcke; but that would be a presumption on a presumption, which is not allowed (65 Pa. St., 380.)

Mrs. Von Dolcke did have money to her credit in the bank. Where did she get it? She says she earned it. On cross-examination she is very uncertain, and she does not agree with her husband as to items deposited in the bank; the testimony is very unsatisfactory. But whether she earned it, or whether her husband gave it to her, I do not see how Miss Robinson can object to the investment she made of it in the house.

If, in fact, the money paid for the house belonged to Von Dolcke at the time of the payment, yet by the payment it would appear that a gift was made to her, and there is no evidence to show a trust in her, and no indebtedness of Von Dolcke further than the $166 paid by Miss Robinson, and I hardly think this is a sufficient existing debt, under the authorities, to give a fraudulent character to the transaction.

Miss Robinson did not rely on this property. She says she heard Von Dolcke say he had bought it and given it to his wife, and this seems to have been on her first visit, when the people in the house were talking of the gift and before she paid any money, and she made the larger payment some time after the deed was executed to Mrs. Von Dolcke.

The evidence is uncertain—most unsatisfactory; the Nashville transaction is pecuiar, it is all suspicious; but, as I understand the cases, there must be proof of intent to defraud the plaintiff as a future creditor to give her standing in court to contest the title.

This intent to defraud must be connected with the gift of the property; that is, the property must be given with intent to defraud.

I think it clear that Miss Robinson was induced to part with her money on representations made by Von Dolcke and Rich which were not true, but there is nothing to connect that transaction with the transaction of the purchase of the property except suspicious circumstances.

From the action of our Supreme Court, in the cases cited, in sustaining the gifts as against subsequent creditors, it appears that the courts of Ohio will not set such gifts aside at the suit of a subsequent creditor or mere suspicious circumstances; there must be proof of the intent in the gift of the property to defraud the future creditors.

I think such proof is failing in this case.

The petition will be dismissed as to Rose Von Dolcke.

The plaintiff may take judgment as ordered at the trial for $650, with interest, against L. Von Dolcke and H. G. Rich.

  *Goebel & Bettinger*, for plaintiff.

  *Theodore Kemper, Charles L. Lundy* and *E. B. Molony, contra.*